# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KOCH MINERALS SÀRL, KOCH NITROGEN INTERNATIONAL SÀRL, <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | Case No. 22-mc-156-LPS |

## PLAINTIFFS KOCH MINERALS SÀRL AND KOCH NITROGEN INTERNATIONAL SÀRL'S RESPONSE TO THE COURT'S MAY 10, 2023 ORDER

DATED: May 24, 2023

OF COUNSEL:

Alexander A. Yanos *pro hac vice*
Rajat Rana *pro hac vice*
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
212-210-9400
alex.yanos@alston.com
rajat.rana@alston.com

Robert Poole *pro hac vice*
ALSTON & BIRD, LLP
1201 W. Peachtree St. NE, Suite 4900
Atlanta, GA 30309
404-881-4547
robert.poole@alston.com

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, Suite 1700
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for Plaintiffs*

DOCS_DE:243223.1 49998/001

# CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................................ 3

ARGUMENT ........................................................................................................................................ 4

    I.      The Koch Parties' judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order entered in the *Crystallex* Action. ................................................................................................................... 4

    II.     The Court should not issue full, unconditional orders of attachment to any conditional writ holders until the lifting of the stay or conclusion of the Third Circuit Appeal, whichever comes first, and thereupon direct service in the order in which each conditional writ holder filed its respective motion for a writ of attachment *fieri facias*. ............................................................. 5

    III.    The Court should determine priority in accordance with the order in which parties filed their respective motions for writs of attachment *fieri facias*. ............. 8

CONCLUSION .................................................................................................................................... 8

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Stanley's Asphalt Paving, Inc.*,
   353 B.R. 63 (Bankr. D. Del. 2006) ...................................................................................6

*Koch Minerals Sàrl v. Bolivarian Republic of Venez.*,
   No. 1:17-cv-2559-ZMF (D.D.C. Nov. 28, 2017), D.I. 7 ¶¶ 12–13, 26......................................1

*PSC, INC. v. LONDERGAN*,
   No. 81C-SE-143, 1985 Del. Super. LEXIS 1282 (Super. Ct. Sep. 11, 1985) .......................6, 7

**STATUTES**

10 *Del. C.* § 5081 ................................................................................................................5, 6

**OTHER**

Woolley, *Delaware Practice*, Volume II § 992 (1906) ....................................................................6

DOCS_DE:243223.1 49998/001

Plaintiffs and judgment creditors Koch Minerals Sàrl ("KOMSA") and Koch Nitrogen International Sàrl ("KNI") (collectively, "the Koch Parties"), submit this brief in response to the following questions posed by the Court in its May 10, 2023 order:

1. Which, if any, judgments should be regarded as "Additional Judgments" under the Sale Procedures Order entered in the *Crystallex* Action?

2. Should the Court issue full, unconditional orders of attachment (including by converting conditional grants) to any creditors? If yes, should the Court direct service of any such orders of attachment?

3. How should the Court determine the priority of any judgments that are made Additional Judgments?

In resolving the above questions, the Court should ensure that each judgment creditor that has moved for a writ of attachment receives the highest priority in recouping proceeds from the upcoming *Crystallex* auction proceedings consistent with the time of their application for a writ of attachment from this Court. This can only be achieved by staying any action in relation to the auction until the Third Circuit's stay is lifted in Petróleos de Venezuela S.A.'s ("PDVSA") current appeal of the Court's March 23, 2023 alter ego finding.

## NATURE AND STAGE OF THE PROCEEDINGS

The Koch Parties received an arbitration award in their favor against Venezuela on October 30, 2017, which was later amended to correct an error on April 11, 2018. *See Koch Minerals Sàrl v. Bolivarian Republic of Venez.*, No. 1:17-cv-2559-ZMF (D.D.C. Nov. 28, 2017), D.I. 7 ¶¶ 12–13, 26. On February 22, 2022, the United States District Court for the District of Columbia entered a consolidated final judgment enforcing the Koch Parties' awards, which the Koch Parties

1

thereafter registered before this Court.  1:22-mc-00156, D.I. 1.  On October 7, 2022 the Koch Parties filed a motion for a conditional writ of attachment *fieri facias* before this Court.  D.I. 2.

On March 23, 2023, the Court issued an order in parallel proceedings in favor of other judgment creditors finding that an alter ego relationship did exist between PDVSA and Venezuela at least until October of 2022.  *See* No. 1:20-mc-00257, D.I. 78, 79.  Subsequently, PDVSA consented to applying the Court's March 23rd order to the Koch Parties' writ of attachment.  D.I. 21.

PDVSA filed an appeal of the Court's March 23rd order on April 6, 2023 and thereafter requested the Third Circuit implement a stay on May 1, 2023.  On May 4, 2023—after the Koch Parties and the other appellee judgment creditors filed their oppositions to PDVSA's motion to stay—this Court entered an order docketing OFAC License No. VENEZUELA-EO13884-2023-1057131-1 (the "OFAC License"), together with the District Court's communications with the Special Master relating to the same.  1:17-mc-00151, D.I. 555.  The OFAC License authorizes the District Court Clerk, and any Additional Judgment Creditors named by the Court, to "engage in transactions and activities ordinarily incident and necessary to the issuance and service of a writ of attachment *fieri facias* for any party that has been designated an 'Additional Judgment Creditor'" under the Sale Procedures Order.  *Id.* at 8.  The day after this Court docketed the OFAC License, the Third Circuit temporarily granted PDVSA's request for a stay.  *See* 23-1651, D.I. 28. The Koch Parties and the other conditional judgment creditor appellees in those proceedings then promptly requested that the Court reconsider its stay, pointing to the new OFAC License and the prejudice they faced if the stay were to continue while other creditors below perfected similar writs of attachment pursuant to the OFAC License, usurping the priority that the appellees would have

otherwise enjoyed. *Id.*, D.I. 29. The Third Circuit denied that motion and instead set the following expedited briefing schedule:

- PDVSA's opening brief was filed on May 17, 2023
- Appellees' response briefs are due on May 24, 2023
- PDVSA's reply brief is due May 30, 2023.
- Oral argument is scheduled for June 1, 2023.

*See* 23-1651, D.I. 30, 35, 42.

## SUMMARY OF ARGUMENT

1.  The Koch Parties' judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order because the Court's March 31, 2023 order granting the Koch Parties a conditional writ of attachment incorporates the Court's March 23, 2023 finding that PDVSA remains the alter ego of Venezuela. *See* D.I. 21. As a result, the Koch Parties' judgment against Venezuela applies with equal force against PDVSA and should therefore be considered in the marketing and auctioning of PDVSA's shares of PDV Holding, Inc. ("PDVH").

2.  The Court can and should enter unconditional orders of attachment to all eligible Additional Judgment Creditors only *after* the conclusion of the Third Circuit's stay and/or the denial of PDVSA's appeal, whichever comes first. While the OFAC License grants the Court the authority to issue final, unconditional orders of attachment at any time, the Court should refrain from issuing final writs to *any* party until the stay in PDVSA's appeal is lifted. A stay before the Court across all judgment creditors seeking issuance of a final writ of attachment would ensure the preservation of priority that judgment creditors subject to the stay, such as the Koch Parties, deserve. Upon issuing final orders of attachment after the stay, the Court should allow delivery to the sheriff and subsequent service with respect to priority. In doing so, the Court should afford

sufficient time for the U.S. Marshals Service to complete service of a party's writ before allowing service for a party with lower priority.

3. The Court should determine the priority of Additional Judgments by referring to the date in which parties requested a writ of attachment before the Court. In doing so, the Court should afford priority to the parties that first moved for writs of attachment. This result is equitable and respects the time and resources expended by parties that appeared first and litigated the alter ego question.

## ARGUMENT

### I. The Koch Parties' judgment should be regarded as an "Additional Judgment" under the Sale Procedures Order entered in the *Crystallex* Action.

Under the Sale Procedures Order, the Court may designate as "Additional Judgment Creditors" holding "Additional Judgments" those parties that: (*i*) hold outstanding judgments against PDVSA; or (*ii*) hold outstanding judgments against Venezuela *and* have proven Venezuela's alter ego relationship with PDVSA. Such a designation would allow those parties to take part in the marketing process in the upcoming *Crystallex* auction and to use the proceeds of that action to satisfy their respective judgments. *See Crystallex*, No. 17-mc-151, D.I. 481 ("Sale Procedures Order") at ¶ 30. The Sale Procedure Order does not define the criteria for qualifying as an Additional Judgment Creditor. It simply states that the Court may designate "Additional Judgments" on or before the "Additional Judgment Deadline," which expires ten days after launching the marketing process. *Id* at 25. It follows that the Court should consider "Additional Judgment Creditors" to be those parties with valid judgments who have been granted final or conditional writs of attachment against PDVSA's shares of PDVH and those with such writs may be considered during the *Crystallex* auction's marketing process.

4

The Koch Parties qualified as Additional Judgment Creditors the day that the Court ordered a conditional writ of attachment in their favor. From that day, the Koch Parties' judgment against Venezuela applied equally to PDVSA and was therefore qualified for consideration in the *Crystallex* auction proceedings. Of note, the conditional nature of the Koch Parties' writ does not affect its status as an Additional Judgment Creditor.[1] On May 1, 2023, the Court received a specific license from OFAC authorizing the issuance and service of final attachment orders. The OFAC License allows the Court to issue final orders of attachment to those entities that the Court has already designated as "Additional Judgment Creditors" pursuant to the Sale Procedures Order. *See* D.I. 90 at 8. It was therefore OFAC's understanding that conditional writs of attachment can and should qualify as Additional Judgments under the terms of the Sale Procedures Order. The Court should interpret the plain language of the Sales Procedures Order and agree with OFAC that conditional writ holders qualify as "Additional Judgment Creditors," which the OFAC License authorizes for receiving finalized writs of attachment.

II. **The Court should not issue full, unconditional orders of attachment to any conditional writ holders until the lifting of the stay or conclusion of the Third Circuit Appeal, whichever comes first, and thereupon direct service in the order in which each conditional writ holder filed its respective motion for a writ of attachment** *fieri facias*.

As stated above, the OFAC License authorizes the Court to issue full orders of attachment—including the ability to convert the Koch Parties' conditional writ into an unconditional writ. With this new authority, the Koch Parties believe that the Court should issue

---

[1] Under the terms of the OFAC License, the Court could finalize the Koch Parties' conditional writ at any time. However, the Third Circuit's stay in these proceedings would bar any further action. That stay, however, should not affect the Koch Parties' designation as an Additional judgment Creditor or its priority in seeking and serving a final writ of attachment.

5

DOCS_DE:243223.1 49998/001

full, unconditional orders of attachment, but only *after* the conclusion of the Third Circuit's stay and/or the denial of PDVSA's appeal, whichever comes first.

Pursuant to Delaware law, priority on attached property will likely be determined by the order in which the U.S. Marshals Service serves the writs upon PDVH—the party in possession of the attached property. There is, however, ambiguity in the law. Delaware's governing statute, 10 *Del. C.* § 5081, says that "[a]n execution shall not bind goods and chattels until it *is delivered to the sheriff* [here, the U.S. Marshals Service] or other proper officer to be executed." 10 *Del. C.* § 5081 (emphasis added). It continues that "[a]n execution shall, *from the time it is so delivered,* bind all the goods and chattels of the defendant within the bailiwick . . . ." *Id.* (emphasis added); *see also* Woolley, *Delaware Practice*, Volume II § 992 (1906) ("When personal property of the defendant is to be seized and sold by execution process, a writ of *fi. fa.* issues, which, when issued and delivered to the sheriff, becomes a lien upon and binds all goods and chattels of the defendant within the country for sixty days."). Some courts, however, have noted confusion in the controlling dates, questioning if it is the date of delivery to the sheriff of the sheriff's subsequent service of the writ. *See*, *e.g.*, *PSC, INC. v. LONDERGAN*, No. 81C-SE-143, 1985 Del. Super. LEXIS 1282, at *4 (Super. Ct. Sep. 11, 1985) ("The issue here is the relative priorities of liens of judgment creditors. This status is based on the date the writ of attachment is placed in the hands of the Sheriff in the County where the property is located *or* the date when the Sheriff makes the levy.") (emphasis added). The modern understanding seems to be that the date of *service* controls and only in that event does a levy on the property occur. *See In re Stanley's Asphalt Paving, Inc.*, 353 B.R. 63, 65 (Bankr. D. Del. 2006) ("The lien created [by section 5081] is effective only upon actual levy by the sheriff and remains valid for three years") (collecting cases).

6

Applying the law to this case, the Court's issuance and service of all of the unconditional, final writs should respect and mirror the priority given to each judgment creditor. As explained in response to the Court's third question below, the Koch Parties believe that the Court should measure priority of writs by the order in which the parties appeared before this Court seeking a writ. *See infra* Section III. Yet, despite having diligently pursued their rights to a writ, the appellee judgment creditors before the Third Circuit find themselves subject to a stay on the eve of the Court issuing final orders of attachment. The Koch Parties are therefore vulnerable—due to no fault of their own—to having their priority superseded by creditors filing newer motions. While priority is likely governed by the service of the writ of attachment or delivery to the U.S. Marshals Service rather than the mere issuance of an attachment,[2] the Court should proceed cautiously and conservatively to preserve the priority of all judgment creditors' claims. As a result, the Koch Parties believe that the correct path is for the Court to refrain from issuing **any** full, unconditional orders granting writs of attachment *fieri facias* to **any** party until the Third Circuit lifts the temporary stay which is currently freezing the Koch Parties' participation in a process where timing determines parties' rights and abilities to recover their judgments.

Alternatively, if the Court were to affirmatively hold that parties' priority will not take effect until the delivery of papers to the U.S. Marshals Service or their subsequent service, and if the Court were to issue final orders of attachment, it should bar any party from delivering final writs to the U.S. Marshals Service for service until the Court gives explicit permission in line with the order of priority explained below.

---

[2] *See PSC. Inc.*, 1985 Del. Super. LEXIS 1282, at *4 (demoting priority for first-in-time creditor that had an undelivered garnishment as the delivery failure created no lien against two subsequent garnishments).

7

### III. The Court should determine priority in accordance with the order in which parties filed their respective motions for writs of attachment *fieri facias*.

The Court should consider priority in direct relation to the order in which parties filed their respective motions requesting writs of attachment *fieri facias*. This structured process would prevent a chaotic "race to the courthouse steps," which risks newer parties receiving final writs and higher priority over those parties that are already before the Court.

As noted above, priority is likely finalized under Delaware law either: (*i*) upon delivery of a writ to the U.S. Marshal for service; or (*ii*) upon the U.S. Marshal finalizing service of that writ. But the Koch Parties and other appellee judgment creditors remain paralyzed before the Third Circuit, unable to take meaningful steps to receive final writs of attachment and serve them in a manner that preserves their priority. As a result, the Courts should stay these auction proceedings until the Third Circuit stay is uplifted and/or PDVSA's appeal is denied, whichever comes first. Such a stay would not prejudice any party considering that the Third Circuit has implemented an aggressive, expedited briefing schedule. After the Third Circuit lifts the stay, the Court should promptly issue final, unconditional writs of attachment and permit service of those writs from the first-filed motion to the newest. In doing so, the Court should afford the U.S. Marshals Service sufficient time between granting each unconditional writ to ensure that those with prior motions can complete delivery and service of the writ before newer judgment creditors.

### CONCLUSION

For the above reasons, the Koch Parties requests that the Court stay the *Crystallex* auction proceedings until the conclusion of the Third Circuit's stay and/or the denial of PDVSA's appeal, whichever comes first. At that time, the Koch Parties request that the Court issue final, unconditional writs of attachment and order their delivery and service upon PDVH in the order in which the judgment creditors filed their respective motions for writs of attachment *fieri facias*.

8

| | |
|---|---|
| DATED: May 24, 2023 | Respectfully submitted: |
| | |
| | /s/ Peter J. Keane |
| OF COUNSEL: | Laura Davis Jones (DE Bar No. 2436) |
| Alexander A. Yanos *pro hac vice* | Peter J. Keane (DE Bar No. 5503) |
| Rajat Rana *pro hac vice* | Pachulski Stang Ziehl & Jones LLP |
| ALSTON & BIRD, LLP | 919 North Market Street, Suite 1700 |
| 90 Park Avenue, 15th Floor | P.O. Box 8705 |
| New York, NY 10016-1387 | Wilmington, DE 19899-8705 |
| 212-210-9400 | (302) 652-4100 |
| alex.yanos@alston.com | ljones@pszjlaw.com |
| rajat.rana@alston.com | pkeane@pszjlaw.com |
| | |
| Robert Poole *pro hac vice* | *Attorneys for Plaintiffs* |
| ALSTON & BIRD, LLP | |
| 1201 W. Peachtree St. NE, Suite 4900 | |
| Atlanta, GA 30309 | |
| 404-881-4547 | |
| robert.poole@alston.com | |