# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 17-mc-151-LPS |
| RUSORO MINING LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 21-mc-481-LPS |
| KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL,<br><br>    Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 22-mc-156-LPS |
| GOLD RESERVE INC.,<br><br>    Plaintiff,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>    Defendant. | Case No. 22-mc-453-LPS |

**GOLD RESERVE'S OBJECTION TO SPECIAL MASTER'S RECOMMENDATION**

Gold Reserve Inc., n/k/a Gold Reserve Ltd. ("Gold Reserve") respectfully objects to the Notice of Special Master's Recommendation of Stalking Horse (D.I. 1596) (the "Recommendation"), and joins the objections filed by its bid consortium members Rusoro Mining Ltd. ("Rusoro") and Koch Minerals SARL and Koch Nitrogen International SARL ("Koch").

The Recommendation should not be accepted for several reasons. First, it contravenes the Delaware law requirement that the PDVH Shares be sold "to the highest bidder" (8 Del. C. § 324(a)). This cannot be disputed given that the purchase price of the recommended bid submitted by Red Tree Investments, LLC ("Red Tree"), a subsidiary of Contrarian Funds, LLC, an affiliate of Contrarian Capital Management, LLC ("Contrarian"), is only **$3.699 billion**, which is a staggering **$3.382 billion** less than the **$7.081 billion** purchase price of the proposal submitted by the Gold Reserve Consortium. Second, the bid results in a fundamental injustice, in that it strips $3.382 billion in value from the Attached Judgment Creditors ("AJCs") for the benefit of a group of financial investors – the 2020 bondholders – that neither have a judgment in these proceedings nor a final judgment in their own highly-disputed SDNY proceedings, and that could give Red Tree/Contrarian a massive, unjustified windfall. Third, the Special Master's stated rationale for recommending such an undervalued, unjust bid cannot be accepted. As set out in Rusoro's objection, it is based on a criterion – settlement of potential litigation risk from the 2020 bondholders – that the Court excluded from the SPA and Evaluation Criteria. Even were this not true, application of this criterion could not, under any circumstances, justify a $3.382 billion decrement in purchase price, as set out in Koch's objection. Further, the document on which the Special Master based his recommendation – the Red Tree/Contrarian Transaction Support Agreement (the "TSA") – in fact provides no certainty of settlement with the 2020 bondholders at

1

all. Finally, as also set out by Koch, the indeterminate criteria used by the Special Master to make the Recommendation will render the Topping Period meaningless.[1]

**1.      The Recommendation Contravenes the Delaware Law Requirement That the PDVH Shares Be Sold "To the Highest Bidder"**

Delaware law requires that, once attached, corporate shares must be sold "at [a] public sale to the highest bidder." 8 Del. C. § 324(a) (emphasis added). This principle is embedded in the SPO and the Court has reinforced on multiple occasions that the purpose of the Sale Process is to obtain a value-maximizing Sale Transaction that provides the greatest benefit to the AJCs.[2] The Court has also confirmed that the "price that results from the Marketing Process will be the best evidence that exists of the fair market value of the PDVH Shares taking into account the benefits and risks associated with this unique asset[.]"" (D.I. 1554, quoting D.I. 1522 at 5). The Red Tree/Contrarian bid contravenes this requirement, in that its purchase price is $3.382 billion lower than the bid submitted by the Gold Reserve Consortium. Such a price decrement "shocks the conscience" and alone should disqualify Red Tree/Contrarian from being selected as the stalking horse (or base) bid. *Girard Tr. Bank v. Castle Apartments, Inc.*, 379 A.2d 1144, 1145 (Del. Super. Ct. 1977) ("It is recognized that decisions of this Court have held that gross inadequacy of price which shocks the conscience of the Court may serve as the basis for setting aside a sheriff's sale."); *see also In re Emery-Watson*, 412 B.R. 670, 675 (Bankr. D. Del. 2009) (noting that in Delaware, "courts have

---

[1] In these circumstances, and at minimum, no bidder protections should be offered to the Red Tree/Contrarian bid.

[2] *See, e.g.*, (D.I. 481, ¶¶ D, H, 33, 36) (SPO) (the goal of the Sale Process is to "ensure a value maximizing sale process" that "result[s] in the highest offer in connection with any Sale Transaction at least sufficient to satisfy the Attached Judgments"); (D.I. 1554 at 4) (Jan. 27, 2025 Order) ( "Second, the Court has endeavored for years to formulate and implement a process that will result in a Successful Bid that is value-maximizing and also reflective of the fair market value of the PDVH Shares, giving due consideration to the many challenges confronting such a process and the impact of those challenges on the value of PDVH.").

long set aside judicial sales of real property for less than 50% of the property's fair market value based on inadequacy of consideration").[3]

**2.     The Red Tree/Contrarian Bid Would Work a Fundamental Injustice**

In addition to gross inadequacy of consideration, the Red Tree/Contrarian bid also should not be the recommended Stalking Horse Bid because it would work a fundamental injustice.[4] The philosophy of the Red Tree/Contrarian bid is based entirely on a risk that they themselves have created – *i.e.*, their threat to bring litigation proceedings to interfere with a Sale Transaction by any other debt-financed bidder. On the back of this risk, Red Tree/Contrarian have formulated a proposal that would strip $3.382 billion in value from the AJCs (and the Venezuela Parties) for the benefit of themselves and other 2020 bondholders, despite the fact that the 2020 bondholders <u>do not</u> have attached judgments in these proceedings <u>or even a final judgment in their own proceedings</u>. The purpose of the Red Tree/Contrarian proposal is to use the proceeds of the Sale Process in this Court to immunize themselves (and the other 2020 bondholders) from an adverse outcome in their SDNY litigation, and thus pay themselves in full on their disputed claims in those proceedings before final judgment, while obtaining the PDVH Shares at the lowest possible price. That is not a proper rationale for a bid in this case, and it compels rejecting the Recommendation.

---

[3] While the determination of whether a sales price is so grossly inadequate as to shock the conscience of the court is largely dependent upon the particular circumstances of the individual case, a decisional standard has evolved in the Superior Court which requires special judicial scrutiny where a property sold at the sheriff's sale fails to secure a bid which represents at least fifty percent of its fair market value ("50% test"). *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994). If the fair market value of the property is over twice the sales price, the price is considered to be grossly inadequate, shocking "the conscience of the court," and justifying the setting aside of the sale. *Id.*

[4] *Smith v. Caldera Props.-Nassau Grove, LLC*, No. CIV.A.S09C-05-005ESB, 2011 WL 2420842, at *2 (Del. Super. Ct. June 9, 2011) ("The sales price need not be unconscionable in order for the court to set aside a sheriff's sale. Delaware courts may, in their discretion, set aside a sale where inadequacy of price will result in unfairness or work an injustice on any party having an interest in the outcome of the sale.").

3

All of this is justified, the Special Master says, because the 2020 bondholders <u>may</u> ultimately prevail in their long-running and heavily-disputed SDNY proceedings (even though this litigation has been ongoing for 5+ years, since it was filed in October 2019); <u>may</u> prevail in convincing OFAC to lift the long-running stay of the exercise of their remedies against CITGO Holding (even though this stay also has been in place for 5+ years, since November 2019); <u>may</u> convince the SDNY to not independently stay the exercise of their remedies (even though the SDNY did just that in the prior appeal proceedings); and then, if all three of these speculative events occur, Red Tree/Contrarian <u>may</u> successfully prevent consummation of a Sale Transaction by a competing bidder by interfering with their financing.

However, putting aside the improbability of <u>all four</u> of these events coming out in favor of Red Tree/Contrarian prior to the consummation of a Sale Transactions, what the Recommendation ignores is that if the first event does not occur, i.e., the 2020 bondholders do not prevail in the SDNY litigation and their pledge thus is invalidated, then Red Tree/Contrarian will have obtained from this Court a massive, unjustified windfall, in that they will have been permitted to purchase the PDVH Shares for only $<u>3.699 billion</u>, and thus diverted from the AJCs (and the Venezuela Parties) the $<u>3.382 billio**n**</u> delta between this low-value price and that of the Gold Reserve Consortium bid.

Stated differently, if the Court approves the Red Tree/Contrarian bid in a final Sale Order entered on August 1, 2025, and then on August 2, 2025 the SDNY holds that the bonds (or the pledge) are invalid, Red Tree/Contrarian will have obtained this unjustified $<u>3.382 billion</u> windfall. The existence of this potential windfall, combined with the definite wealth transfer to the benefit of Red Tree/Contrarian – borne at substantial expense by the AJCs, judgment debtors and other Topping Bidders – would work a fundamental injustice. This independently compels rejection of the Recommendation.

## **CONCLUSION**

For the foregoing reasons, and those set out in the objections filed herewith by Rusoro and Koch, the Gold Reserve Consortium respectfully requests that the Court reject the Recommendation. To do otherwise would not only contravene the Court's December 31, 2024 Order setting the SPA terms and Evaluation Criteria and prevent a competitive topping period, but it would also result in the Sale Process accomplishing exactly the opposite of Delaware law and the Court's stated goal of maximizing value to AJCs. It would do this by transferring massive amounts of value away from those AJCs to the holders of the 2020 bonds,[5] the validity of whose claims remain in doubt, and permitting one AJC (Red Tree/Contrarian) – who also is a 2020 bondholder – to acquire the PDVH Shares "on the cheap" through litigation threats that seek to undermine the integrity of this process.

These problems are not mitigated by the fact that Recommendation is only for the initial stalking horse bid. Under Delaware law, the purpose of a stalking horse bid is to "establish a competitive floor or minimum bid," for future bidding. *In re AE Liquidation, Inc.*, 866 F.3d 515, 519 n.3 (3d Cir. 2017). A substantially undervalued bid that works a fundamental injustice cannot ever meet these requirements and, for the reasons set forth above and in other objections filed herewith, the Red Tree/Contrarian bid, and the philosophy of the Recommendation, unfortunately would have exactly the opposite effect of setting a competitive floor or valid minimum bid.

In light of the importance of the issues at hand, Gold Reserve respectfully requests that the Court hold a hearing regarding these concerns at the Court's earliest convenience.

---

[5] *See* Nicolle Yapur, *Citgo Bid Puts Some PDVSA Bondholders in Line for Windfall*, Bloomberg Law (Mar. 27, 2025, 4:02 PM), https://news.bloomberglaw.com/bankruptcy-law/citgo-bid-puts-some-pdvsa-bondholders-in-line-for-windfall.

5

Dated: March 31, 2025

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ *Matthew P. Ward*
Kevin J. Mangan (#3810)
Matthew P. Ward (#4471)
Stephanie S. Riley (#5803)
1313 N. Market St., Suite 1200
Wilmington, DE 19801
Telephone: 302-252-4320
Kevin.mangan@wbd-us.com
Matthew.ward@wbd-us.com
Stephanie.riley@wbd-us.com

**NORTON ROSE FULBRIGHT US LLP**
Matthew H. Kirtland (*pro hac vice*)
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: 202-662-0200
Matthew.kirtland@nortonrosefulbright.com

- and -

Katherine G. Connolly (*pro hac vice*)
One Embarcadero Center, Suite 1050
San Francisco, CA 94101
Telephone: 628-231-6816
Katie.connolly@nortonrosefulbright.com

- and -

Taylor J. LeMay (*pro hac vice*)
1550 Lamar Street, Suite 2000
Houston, TX 77010
Telephone: 713-651-5151
Taylor.lemay@nortonrosefulbright.com

*Attorneys for Gold Reserve Ltd.*